IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                *
JAMES L. CUNNINGHAM,
                                *
     Plaintiff,
                                *
v.                                        CIVIL NO.: WDQ-05-1084
                                *
SPACE TELESCOPE SCIENCE
INSTITUTE, A DIVISION OF        *
ASSOCIATION OF UNIVERSITIES
FOR RESEARCH IN ASTRONOMY,      *
INC.,
                                *
     Defendant.
                                *
```

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

James Cunningham, *pro se*, has sued his former employer, the Association of Universities for Research in Astronomy, Inc. ("AURA"), under the Employment Retirement Income Security Act of 1974 ("ERISA")[1] for withholding and delaying payments of employee welfare benefits. Pending are Cunningham's motions for leave to: (1) file a second amended complaint (Paper No. 50); and (2) submit a corrected version of his proposed second amended complaint (Paper No. 59). For the following reasons, the motions will be denied.

---

[1] 29 U.S.C. §§ 1001-1461.

1

I.  Background

AURA is a consortium of universities and educational institutions that operates the Space Telescope Science Institute (the "Institute") in Baltimore, Maryland.  Def.'s Mot. to Dismiss 2 (Paper No. 17).  Cunningham was employed at the Institute as a software and test engineer from 1993 to 1997.  First Am. Compl. ¶ 2 (Paper No. 33).

Cunningham contends that in the fall of 1996 he began experiencing arm pain associated with carpal tunnel syndrome.  Pl.'s Resp. to Def.'s Mot. to Dismiss 1 (Paper No. 25).  Cunningham's doctors recommended that he change his work environment and later advised him to stop working.  *Id*. at 2.  Cunningham filed a workers' compensation claim in June 1997 and resigned soon afterward.  *Id*. at 3.  AURA effectively terminated his health benefits on June 30, 1997.  Def.'s Mot. to Dismiss 3.

In November 2000, the Institute's long-term-disability insurance carrier, CIGNA Corporation ("CIGNA"), awarded Cunningham retroactive long-term-disability benefits from December 1997 to December 1999, and future benefits subject to a review of his claim.  *Id*. at 3, Ex. 2.  Consequently, the Institute reinstated Cunningham's health benefits on September 1, 2001 pending CIGNA's final determination.  *Id*. at 3, Exs. 3, 6.  In December 2001, CIGNA determined that Cunningham was not permanently disabled, and discontinued long-term-disability

payments from June 9, 2000.  *Id*. Ex 5.  The Institute then
terminated Cunningham's health benefits on March 31, 2002.  *Id*.
at 3, Ex. 6.

On March 22, 2005, Cunningham sued AURA in the Circuit Court
for Baltimore City, alleging that the termination of his health
benefits breached his employment contract.  The case was removed
to this Court on April 21, 2005.  AURA then moved to dismiss,
arguing that ERISA preempted Cunningham's common-law breach-of-
contract claim to recover employee benefits, and Cunningham moved
for leave to amend his Complaint.  The Court granted Cunningham's
motion and denied the motion to dismiss as moot on March 22,
2006.  *Cunningham v. Space Telescope Sci. Institute, A Div. of
Ass'n of Univ. for Research in Astronomy, Inc.*, WDQ-05-1084, (D.
Md. Mar. 22, 2006) (Paper No. 32).  Cunningham's First Amended
Complaint seeks:

> (Count 1) health benefits due from June 12, 1997 through
> October 2, 2001, with interest;
>
> (Count 2) interest for the delayed payment of long-term-
> disability and retirement benefits;
>
> (Count 3) health benefits due from March 31, 2002 to the
> present, with interest;
>
> (Count 4) unspecified "civil penalties" for AURA's breach of
> fiduciary duty;
>
> (Count 5) $3 million in damages for AURA's: (a) interference

3

with his health and disability benefits; and (b) breach

of employment agreement; and

(Count 6) attorney's fees and costs.

First Am. Compl. ¶¶ 12-18.

Cunningham alleges that discovery has revealed that, in early 1999, AURA disclosed the contents his long-term-disability claim with CIGNA to AURA's workers' compensation and liability insurer, The Hartford Financial Services Group, Inc. ("Hartford").  Pl.'s Mem. in Supp. of Pl.'s Mot. for Leave to File Second Am. Compl. 2.  Cunningham alleges that Hartford then instructed AURA not to submit the claim to CIGNA, which delayed the processing of the claim for almost 19 months.  *Id.* at 3.

Cunningham now moves to amend his First Amended Complaint, seeking to join Hartford as a defendant, add claims of "bad faith, intentional misrepresentation, constructive fraud, tortious interference, civil conspiracy, aiding and abetting, and breach of fiduciary duty," and demand $5 million in compensatory damages and $10 million in punitive damages.  Pl.'s Mot. to Correct Proposed Second Am. Compl. (Paper No. 59), Attach. 1 ¶¶ 10, 17, 21.

II.  Discussion

A.  Standard of Review

1.  Amendment of Pleading

Under Rule 15(a), after a responsive pleading has been served by the adverse party, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  "The law is well settled that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted).  "Delay alone is an insufficient reason to deny leave to amend. . . . Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Id.*  AURA argues that the proposed amendment and corrections are futile because the added claims are preempted by ERISA.


2.  Futility of Amendment

A proposed amendment to a complaint is futile if it would not withstand a motion to dismiss under Rule 12(b)(6). *Classen Immunotherapies, Inc., v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 459 (D. Md. 2005) *see also Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995).

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan*, 7 F.3d at 1134. In deciding a Rule 12(b)(6) motion, a court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998). A court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action. *Id.*

B. ERISA Preemption of State Law Claims

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila* 542 U.S. 200, 208 (2004)(citations omitted).

ERISA preempts "any and all State laws insofar as they may

now or hereafter relate to any employee benefit plan" that is governed by ERISA.  29 U.S.C. § 1144(a) (1998) (ERISA § 514(a)). ERISA defines the term "State law" to "include[] all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."   29 U.S.C. § 1144(c) (1998) (ERISA § 514(c)).   ERISA provides an exemption from preemption for "any law of any State which regulates insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A) (1998) (ERISA § 514(b)(2)(A), often referred to as ERISA's "savings clause").

ERISA displaces various state-law causes of action with a comprehensive civil enforcement mechanism in § 502(a), codified as 29 U.S.C. § 1132(a).  The integrated scheme is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans" and "'represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.'"  *Aetna Health Inc., * 542 U.S. at 208 (*quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), *limited on other grounds by Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), *and superseded by statute on other grounds*, 29 U.S.C. § 1144(b)(7), *as recognized in Hunter v. Ameritech,* 779 F. Supp. 419, 421 (N.D. Ill. 1991)).  The "carefully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong

7

evidence that Congress did *not* intend to authorize other remedies
that it simply forgot to incorporate expressly." *Massachusetts
Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).

Thus "any state-law cause of action that duplicates,
supplements, or supplants the ERISA civil enforcement remedy
conflicts with the clear congressional intent to make the ERISA
remedy exclusive and is therefore pre-empted." *Aetna Health
Inc.,* 542 U.S. at 209.  Consequently, "if an individual, at some
point in time, could have brought his claim under ERISA §
502(a)(1)(B),[2] and where there is no other independent legal duty
that is implicated by a defendant's actions, then the
individual's cause of action is completely pre-empted by ERISA."
*Id*. at 210; *see also Powell v. Chesapeake and Potomac Tel. Co. of
Va*. 780 F.2d 419, 421 (4th Cir. 1985) ("state laws, insofar as
they are invoked by beneficiaries claiming relief for injuries
arising out of the administration of employee benefit plans,
'relate to' such plans and, absent an applicable exemption, are
preempted by ERISA").

---

[2] 29 U.S.C. § 1132(a)(1)(B) provides:
A civil action may be brought—
(1) by a participant or beneficiary—
        . . .
(B) to recover benefits due to him under the terms of his
plan, to enforce his rights under the terms of the plan, or
to clarify his rights to future benefits under the terms of
the plan; . . .
29 U.S.C. § 1132 (2006).

C.  Analysis

In ruling on Cunningham's motion to amend, the Court analyzes the proposed amended complaint as it would read with Cunningham's corrections incorporated as requested in his subsequent motion.  The Court will discuss first Cunningham's proposed claims of "bad faith, intentional misrepresentation, constructive fraud, [and] tortious interference," and then his breach-of-fiduciary-duty claim for monetary damages.[3]


1.  Fraud and Tortious Interference

Cunningham's claims of "bad faith, intentional misrepresentation, [and] constructive fraud" are either synonyms for or subtypes of the common-law tort of fraud.  As for "tortious interference,"  Maryland recognizes a tort of interference with business relationships that falls into one of two categories: (1) interference that induces a breach of contract; and (2) interference that wrongfully interferes with an economic relationship.  *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297, (1994); *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47,

---

[3] As for Cunningham's claims of "civil conspiracy" and "aiding and abetting," "'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 645 n.8 (1994).  Similarly, "alleged aiders, abettors, and co-conspirators are simply additional parties jointly liable with the principal perpetrator," should liability arise. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 360 (2000).

69 (1984).  All are preempted by ERISA.

In the proposed counts, Cunningham alleges that AURA and
Hartford committed the alleged torts "to interfere with the
Plaintiff's obtaining entitled medical treatments, disability
benefits, Workers' Compensation benefits and . . . to place the
Plaintiff at an inferior position [in obtaining] these benefits."
Pl.'s Mot. to Correct Proposed Second Am. Compl., Attach. 1 ¶¶
16, 20.  Congress has provided Cunningham the means to enforce
his benefit entitlement through the comprehensive civil
enforcement scheme in ERISA § 502(a).  "[A] state cause of action
that provides an alternative remedy to those provided by the
ERISA civil enforcement mechanism conflicts with Congress' clear
intent to make the ERISA mechanism exclusive," and is preempted.
*Aetna Health Inc.*, 542 U.S. at 214 n.4.

Cunningham first argues that his proposed claims regulate
the business of insurance and thus fall within the ERISA savings
clause, § 514(b)(2)(A).  29 U.S.C. § 1144(b)(2)(A) (1998).  But
the Supreme Court has held, "based on 'the common-sense
understanding of the saving clause, the McCarran-Ferguson Act[4]
factors defining the business of insurance, and, most
importantly, the clear expression of congressional intent that

_____

[4] The McCarran-Ferguson Act provides in part, that "No Act
of Congress shall be construed to invalidate, impair, or
supersede any law enacted by any State for the purpose of
regulating the business of insurance . . ." 15 U.S.C. § 1012(b)
(1947).

10

ERISA's civil enforcement scheme be exclusive, . . . that [the plaintiff's] state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by § 514(b)(2)(A).'"  *Aetna Health Inc.*, 542 U.S. at 217 (*quoting Pilot Life Ins. Co.*, 481 U.S. at 57 (emphasis added); *see also Powell*, 780 F.2d at 423 (ERISA's savings clause exempts from preemption only those state insurance laws that regulate the business of insurance).

Cunningham next argues that the claims in the proposed amendment have only a tenuous relation to his ERISA-covered benefit plans, and that "'[c]laims involving conduct, and not rooted in the plain language of the plan do not implicate ERISA's enforcement clause."  Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Correct Proposed Second Am. Compl. (Paper No. 61) (*quoting McKandes v. Blue Cross and Blue Shield Assoc.*, 243 F. Supp. 2d 380, 386 (D. Md. 2003).  In *McKandes*, the court held that the plaintiff's claims were not for benefits under the terms of her employee health plan, which would have been preempted by ERISA, but for a declaration that her health insurer had no right to a portion of the automobile insurance recovery she received after an accident.  *Id*.  Thus the conduct complained of in *McKandes* was not related to a dispute over money due under an employee health plan, but to a dispute between an employee and her health insurer over money received from a third party.  Here, Cunningham's

claims all arise out of a dispute with AURA over alleged delays or nonpayment of benefits under his ERISA-governed benefit plans.

The relationship between Cunningham's proposed claims and his benefit plans with AURA is not tenuous simply because the claims are pled in tort law rather than contract, or because he demands a different form of recovery than what he is due from the plans.  "[T]he mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) [does not] put the cause of action outside the scope of the ERISA civil enforcement mechanism."  *Aetna Health Inc.,* 542 U.S. at 214.  "To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law."  *Powell*, 780 F.2d at 422.


2.  Breach of Fiduciary Duty

Cunningham demanded "civil penalties" for AURA's alleged breach of fiduciary duty in his First Amended Complaint.  His proposed amendment would add a demand for compensatory and punitive damages for the same claim against AURA and Hartford.

The Supreme Court has held that ERISA § 502(a)(2)[5] authorizes a plan participant or beneficiary to bring an action for breach of fiduciary duty under ERISA § 409.[6]  *Massachusetts Mut. Life Ins.*, 473 U.S. at 140.  But any recovery under § 409 must "inure[] to the benefit of the plan as a whole," not to the individual who brings the suit.  *Id*.  Cunningham's proposed claims for individual relief thus fall outside the scope of recovery set in ERISA § 502(a) and are preempted.

III.  Conclusion

The claims in the proposed amendment, including those Cunningham moves to add in his corrections, are preempted by ERISA and would not survive a motion to dismiss, rendering them

---

[5] 29 U.S.C. § 1132(a)(2) provides:
A civil action may be brought—
. . .
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 [ERISA § 409] of this title [for breach of fiduciary duty]; . . .
29 U.S.C. § 1132 (2006).

[6] ERISA § 409 provides in part:
Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
29 U.S.C. § 1109 (1975)(emphasis added).

futile.  Accordingly, the Court will deny Cunningham's motions

for leave to file a second amended complaint and to correct the

proposed amendment.


October 26, 2006                              /s/
Date                          William D. Quarles, Jr.
                              United States District Judge