IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *
JAMES L. CUNNINGHAM,
                                    *
      Plaintiff,
                                    *
v.                                          CIVIL NO.: WDQ-05-1084
                                    *
SPACE TELESCOPE SCIENCE
INSTITUTE, A DIVISION OF *
ASSOCIATION OF UNIVERSITIES
FOR RESEARCH IN ASTRONOMY,          *
INC.,
                                    *
      Defendant.
                                    *

*     *     *     *     *     *     *     *     *     *     *     *     *

                         MEMORANDUM OPINION

      James L. Cunningham, *pro se*, has sued his former employer,

the Association of Universities for Research in Astronomy, Inc.

("AURA"), under the Employment Retirement Income Security Act of

1974, as amended ("ERISA"),[1] for withholding and delaying

payments of employee welfare benefits.  Pending is Cunningham's

motion for leave to file a second amended complaint.[2]  For the

following reasons, the motion will be denied.

_____

      [1] 29 U.S.C. §§ 1001-1461.

      [2] Cunningham's motion is titled "Plaintiff's Motion for
Leave to File Third Amended Complaint," but as he has only
amended his Complaint once (Paper No. 33), the motion, if
granted, would have permitted filing of a second amended

I.  Background

    AURA is a consortium of universities and educational institutions that operates the Space Telescope Science Institute (the "Institute") in Baltimore, Maryland.  Def.'s Mot. to Dismiss (Paper No. 17) 2.  Cunningham was employed at the Institute as a software and test engineer from 1993 to 1997.  Am. Compl. (Paper No. 33) ¶ 2.

    Cunningham contends that in the fall of 1996 he began experiencing arm pain associated with carpal tunnel syndrome. Pl.'s Opp'n to Def.'s Mot. to Dismiss (Paper No. 25) 1. Cunningham's doctors recommended that he change his work environment and later advised him to stop working.  *Id*. at 2.  In June 1997, Cunningham filed a workers' compensation claim and resigned soon afterward.  *Id*. at 3.  On June 30, 1997, AURA effectively terminated his health benefits.  Def.'s Mot. to Dismiss 3.

    In November 2000, the Institute's long-term-disability insurance carrier, CIGNA Corporation ("CIGNA"), awarded Cunningham retroactive long-term-disability benefits from December 1997 to December 1999, and future benefits subject to a review of his claim. *Id*. at 3, Ex. 2.  Consequently, the Institute reinstated Cunningham's health benefits on September 1, 2001 pending CIGNA's final determination.  *Id*. at 3, Exs. 3, 6.

complaint.

2

In December 2001, CIGNA determined that Cunningham was not permanently disabled, and discontinued long-term-disability payments from June 9, 2000. *Id*. Ex 5. The Institute then terminated Cunningham's health benefits on March 31, 2002. *Id*. at 3, Ex. 6.

On March 22, 2005, Cunningham sued AURA in the Circuit Court for Baltimore City, alleging that the termination of his health benefits breached his employment contract. The case was removed to this Court on April 21, 2005. AURA then moved to dismiss, arguing that ERISA preempted Cunningham's common-law breach-of-contract claim to recover employee benefits, and Cunningham moved for leave to amend his Complaint. On March 22, 2006, the Court granted Cunningham's motion and denied AURA's motion to dismiss as moot.[3] Paper No. 32.

On July 24, 2006, Cunningham moved for leave to file a second amended complaint, seeking to: (1) add claims for fraud,

---

[3] Cunningham's Amended Complaint seeks:
(I) health benefits due from June 12, 1997 through October 2, 2001, with interest;
(II) interest for the delayed payment of long-term-disability and retirement benefits;
(III) health benefits due from March 31, 2002 to the present, with interest;
(IV) unspecified "civil penalties" for AURA's breach of fiduciary duty;
(V) $3 million in damages for AURA's: (a) interference with his health and disability benefits; and (b) breach of employment agreement; and
(VI) attorney's fees and costs.
Am. Compl. ¶¶ 12-18.

tortious interference, and breach of fiduciary duty; (2) join The Hartford Financial services Group, Inc., as a defendant; and (3) demand $15 million in compensatory and punitive damages.  For the reasons stated in the Court's accompanying opinion, the motion was denied on October 26, 2006.  Papers No. 64 and 65.

II.  Discussion

Count IV of Cunningham's Amended Complaint asks the Court to enforce civil penalties for AURA's alleged "breaches of fiduciary duties, other wrongful actions and violations of ERISA."  Am. Compl. ¶ 15.  Cunningham states that, as he is not an attorney, he "was unaware prior to filing his First Amended Complaint of specific ERISA civil penalties regarding denial of benefit rights, rights to plan  notifications and modification notices, COBRA[4] documents and notices, plan contracts, financial reports and [HIPAA[5]] regulations."  Pl.'s Mem. in Supp. of Pl.'s Mot. 2.  He now moves to file a second amended complaint, seeking to "clarify and list specific ERISA civil penalties and include [the claims] of his spouse and minor children."  *Id.*

---

[4] The Consolidated Omnibus Budget Reconciliation Act of 1985 (Pub. L. 99-272, Apr. 7, 1986, 100 Stat. 82, "COBRA") § 10002(a), codified as 29 U.S.C. §§ 1161-1168, amended ERISA to provide limited continuation of group health insurance benefits.

[5] The Health Insurance Portability and Accountability Act of 1996 (Pub. L. 104.191, Aug 21, 1996, 110 Stat. 1936), as amended ("HIPAA").

Specifically, Cunningham's proposed second amended complaint expands paragraph 15 of Count IV with seven subparagraphs, lettered A through G, seeking $110 per day each for Cunningham, his wife, and his two dependent children, for AURA's: (A) intentional interference and delay in notifying his insurer of his long-term-disability claim; (B) failure to provide health benefits; (C) failure to provided unspecified plan notification documents; (D) failure to provide requested group-health-plan documents; (E) intentional delay and refusal to provide the reasons for the delay in processing his long-term-disability claim; (F) failure and refusal to provide COBRA notification documents; and (G) HIPAA penalties for disclosing Cunningham's medical information without authorization.  Pl.'s Mot. Attach. 10 ¶ 15. (proposed second amended complaint, cited *infra* as "Prop. Compl.").

II.A.  Standard of Review

II.A.1.  Amendment of Pleadings

Under Rule 15(a), after a responsive pleading has been served by the adverse party, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "The law is well settled that leave to amend a pleading should be denied *only when* the amendment would be

prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted). "[T]o deny leave to amend. . . delay must be accompanied by prejudice, bad faith, or futility." *Id*.

AURA contends that the Court should deny Cunningham's motion to amend, as the proposed additional claims either fail to state a claim or are time-barred, and thus permitting the amendment would be futile and prejudice AURA with further delay.

II.A.2. Futility of Amendment

A proposed amendment to a complaint is futile if it would not withstand a motion to dismiss under Rule 12(b)(6). *Classen Immunotherapies, Inc., v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 459 (D. Md. 2005) *see also Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995).

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All allegations are treated as true, and

6

the complaint is viewed in the light most favorable to the

plaintiff.  *Mylan*, 7 F.3d at 1134.  In deciding a Rule 12(b)(6)

motion, a court will consider the facts stated in the complaint

and any attached documents.  *Biospherics, Inc., v. Forbes, Inc.*,

989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th

Cir. 1998).  A court may also consider documents referred to in

the complaint and relied upon by the plaintiff in bringing the

action.  *Id.*


II.B.  Analysis

II.B.1  Failure to State a Claim for Civil Penalties under ERISA

II.B.1.a.  Disclosure Not Required under ERISA

      In paragraphs 15(A), 15(B), and 15(E), Cunningham seeks

civil penalties of $110 per day under 29 U.S.C. § 1132(c)(1)[6] for

---

      [6] Cunningham's proposed amended complaint states that he
"seek[s] enforcement of civil penalties under provisions of ERISA
including §§ 101, 102, 103, 104, 105, 502, 503, 510 and 601
through 609."  Prop. Compl. ¶ 15.  The civil enforcement statute
that would provide the $110-per-day penalty he seeks against AURA
as his employee benefit plan's administrator is ERISA §
502(c)(1), codified as 29 U.S.C. 1132(c)(1), which provides in
part:
      Any administrator (A) who fails to meet the requirements of
      paragraph (1) or (4) of section 1166 of this title, section
      1021(e)(1) of this title or section 1021(f), or section
      1025(a) of this title with respect to a participant or
      beneficiary, or (B) who fails or refuses to comply with a
      request for any information which such administrator is
      required by this subchapter to furnish to a participant or
      beneficiary (unless such failure or refusal results from
      matters reasonably beyond the control of the administrator)
      by mailing the material requested to the last known address
      of the requesting participant or beneficiary within 30 days

7

AURA's (1) "intentional interference and intentional delay in notification to the insurer of the Plaintiff's Long Term Disability claim;" (2) "failure to provide Plaintiffs and qualified dependent child Group Health benefits;" and (3) "intentional delay and refusal to provide requested information and explanation of the reasons for the delay in processing Plaintiffs long term disability claim."  Prop. Compl. ¶ 15.

AURA argues that these allegations fail to state a claim for relief because "29 U.S.C. § 1132(c) only subjects plan administrators to liability 'for failure or refusal to release the information that Subchapter 1 of ERISA specifically requires plan administrators to release.'"  Opp'n 5 (*quoting Groves v. Modified Retirement Plan for Hourly Paid Employees of Johns Manville Corp. and Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986).  AURA contends that plan administrators are not specifically required under any of Subchapter 1's reporting and

---

after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.
29 U.S.C. § 1132(c)(1).
The Secretary of Labor has increased the maximum penalty to $110 per day pursuant to 29 U.S.C. § 1135.  29 C.F.R. § 2575.502c-1.

disclosure requirements to: (1) notify an insurer of a disability claim; (2) provide plan benefits; or (3) explain the reasons for a delay in plan benefits.

Apart from a failure to abide by the notice and reporting requirements under 29 U.S.C. §§ 1021, 1025, and 1166, which is not alleged in the relevant paragraphs, § 1132(c)(1) only provides a civil penalty for a plan administrator's "fail[ure] or refus[al] to comply with a request for any information which such administrator is required by [Subchapter 1] to furnish to a participant or beneficiary."  29 U.S.C. § 1132(c)(1). Cunningham's allegations in paragraphs 15(A) and 15(B) do not aver a request for any information, and the information allegedly requested in 15(E), "the reasons for the delay in processing [Cunningham's] long term disability claim," is not specifically required to be furnished by a plan administrator under any of the provisions in ERISA's Subchapter 1.  Accordingly, Cunningham's allegations in paragraphs 15(A), 15(B), and 15(E) of the proposed amended complaint would not support a claim for relief under § 1132(c).

II.B.1.b.  HIPAA Violations

In paragraph 15(G) of the proposed amendment, Cunningham "seeks the applicable HIPAA penalties" for AURA's alleged improper disclosure of his medical information.  Prop. Compl. ¶

9

15.

Although HIPAA provides civil and criminal penalties for improper disclosures of medical information, enforcement of those provisions is specifically delegated to the Secretary of the Department of Health and Human Services, and does not create a private right of action.  42 U.S.C, §§ 1320d-5, 1320d-6; *Acara v. Banks*, 410 F.3d 569, 571-72 (5th Cir. 2006); *Agee v. United States*, 72 Fed. Cl. 284, 289-90 (2006).

Cunningham argues that he does not seek civil penalties, but instead asks the Court to "enforce or recommend prosecution of [AURA] for privacy violations of the HIPAA laws."  Reply 15.

Federal courts do not recommend criminal prosecution or assume an executive department's statutory prerogative to enforce civil penalties.  *See, e.g., U.S. v. Derrick*, 163 F.3d 799, 825 (4th Cir. 1998) (the "prosecutorial function rests exclusively with the Executive"); *Committee for Consideration of Jones Falls Sewage System v. Train*, 387 F. Supp. 526, 529 (D. Md. 1975) (decision to prosecute within the discretion of the executive branch).  Accordingly, Cunningham's demand for penalties under HIPAA would be dismissed.

II.B.2  Statute of Limitations

AURA argues that any civil penalty claims under 29 U.S.C. § 1132(c)(1) supported by the remaining allegations in paragraphs 15(C), 15(D), and 15(F) of the proposed amendment would be barred

by a one-year statute of limitations.

II.B.2.a  Applicable Limitations Period

"ERISA provides no explicit limitation period for bringing a private cause of action" under 29 U.S.C. § 1132.[7] *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir. 1987).  "In such circumstances, the federal courts look to state law for an analogous limitation provision to apply."  *Id.*

"The purpose of [29 U.S.C. § 1132(c)(1)] is not to compensate participants for injuries, but to punish noncompliance with ERISA."  *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996).  Accordingly, courts apply the state-law limitation periods for civil penalties for actions brought under § 1132(c)(1).  *E.g., Underwood v. Fluor Daniel, Inc.*, No. 95-3036, 1997 WL 33123, at *5 (4th Cir. Jan. 28, 1997) (unpublished) (applying South Carolina's one-year limitations period for statutory penalties and forfeitures); *Iverson v. Ingersoll-Rand Co.*, 125 Fed. App'x 73, 77 (8th Cir. 2004.) (unpublished); *Bryant v. Food Lion Inc.,* 100 F. Supp. 2d 346, 377 n.140 (D.S.C. 2000), *aff'd,* 8 Fed. App'x. 194 (4th Cir. 2001).  Maryland requires that

---

[7] Although Cunningham argues that the limitation on actions for breach of fiduciary duty under 29 U.S.C. § 1113 applies, that statute specifies its application is limited to actions commenced "under this part, or with respect to a violation of this part," specifically, 29 U.S.C. Chapter 18., Subchapter I, Subtitle B, Part 4, titled "Fiduciary Responsibility," comprising sections 1101 to 1114.  29 U.S.C. § 1113.

a "suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed."  Md. Code. Ann., Cts. & Jud. Proc. § 5-107.[8]

Cunningham argues that an exception to Maryland's Courts and Judicial Proceedings Article § 5-107 under § 5-106(z),[9] which provides a three-year limitations period for prosecution of misdemeanor offenses under Maryland's Insurance Article, is applicable to his claims.  He contends that because he proffers evidence of AURA's "continuous fraudulent concealment, omission, bad faith and illegal intentional interference and criminal violations of ERISA," which "would be considered misdemeanor crimes," the Court should apply the three-year standard for similar crimes under the Insurance Article.

Despite Cunningham's characterization of AURA's alleged conduct, the private action to civil penalties permitted under 29 U.S.C. § 1132(c)(1) is not akin to a prosecution for crimes under Maryland's Insurance Article.  Accordingly, the Court applies Maryland's one-year limitations period under § 5-107.

---

[8] Section 5-107 provides: "Except as provided in § 5-106 of this subtitle, a prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed."  Md. Code. Ann., Cts. & Jud. Proc. § 5-107.

[9] Section 5-106(z) provides: "A prosecution for a misdemeanor offense under the Insurance Article shall be instituted within 3 years after the offense was committed."  Md. Code. Ann., Cts. & Jud. Proc. § 5-106(z).

II.B.2.b  Claim Accrual

Cunningham's remaining proposed allegations allege AURA's failure to provide: (1) "plan notification documents" from June 12, 1997 to October 2, 2001 (Prop. Compl. ¶ 15(C)); (2) group-health-plan documents after Cunningham made written requests on December 10, 2001 and March 28, 2002 (Prop. Compl. ¶ 15(D))); and (3) COBRA notification documents after AURA terminated Cunningham's health benefits on April 1, 2002 (Prop. Compl. ¶ 15(F)).

Although federal courts may apply state statutes of limitations in ERISA actions, "the time when a cause of action accrues is governed by federal, not state, law." *E.g.*, *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983); *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991); *Bryant,* 100 F. Supp. at 377 n.140.  "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Correction,* 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Generally, penalties begin to accrue under 29 U.S.C. § 1132(c)(1) when the plan administrator either refuses to comply with a valid request or fails to provide the required information within 30 days after such request.  29 U.S.C. § 1132(c)(1)(B);

13

*see also Harless v. Research Institute of America*, 1 F. Supp. 2d 235, 240 (S.D.N.Y. 1998); *Kumar v. Higgins*, 91 F. Supp. 2d 1119, 1124 (N.D. Ohio 2000).  Penalties for failure to provide "plan notification documents" such as notices of transfers of excess pension assets to health benefits accounts, annual plan funding notices, and periodic pension benefits statements begin when such statements become due under 29 U.S.C. §§ 1021(e)(1), 1021(f), and 1025(a), respectively.  For a failure to fulfill the COBRA notice requirement under 29 U.S.C. § 1166, the penalty period under § 1132(c)(1) begins on the forty-fifth day after the qualifying event,[10] which Cunningham alleges was the termination of his health benefits on April 1, 2002.  *Bryant,* 100 F. Supp. at 377.

Cunningham is presumed to have known of AURA's potential liability and the applicable timelines for civil penalties under 29 U.S.C. §§ 1132(c)(1) and 1166.  *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("everyone is charged with knowledge of the United States Statutes at Large").  Thus, Cunningham had sufficient facts to reveal his causes of action for AURA's alleged failures to provide: (1) "plan notification documents" when those documents were due, as late as October 2, 2001 (Prop. Compl. ¶ 15(C)); (2) group-health-plan documents when

---

[10] Under 29 U.S.C. § 1166(a)(2), the employer must notify the plan administrator of a qualifying event within 30 days, and the plan administrator must then notify any qualified beneficiary within 14 days under § 1166(a)(4) and (c).

he requested those documents on March 28, 2002 and AURA had not
provided them 30 days later (Prop. Compl. ¶ 15(D)); and (3) COBRA
notification documents when AURA did not provide such documents
45 days after his group-health benefits were terminated on April
1, 2002 (Prop. Compl. ¶ 15(F)).[11]  As all of these alleged causes
of action accrued more than a year before Cunningham brought this
suit on March 25, 2005, they are time-barred.


II.B.3  Joinder of Wife and Dependent Children

    Cunningham seeks to join his wife and two dependent children
as co-plaintiffs to his proposed claims for civil penalties in
Count IV.  Prop. Compl. ¶ 15; Pl.'s Mem. in Supp. of Pl.'s Mot.
2.  As the proposed claims would fail as a matter of law, the
joinder of additional plaintiffs to those claims would be futile.


III.  Conclusion

    For the reasons stated above, the new claims in the proposed
second amendment would not survive a motion to dismiss.
Accordingly, Cunningham's motion for leave to amend will be
denied.


| June 7, 2007 | /s/ |
| --- | --- |
| Date | William D. Quarles, Jr. |
|  | United States District Judge |

---

    [11] Cunningham was notified that his group-health-plan
benefits would be terminated in a March 25, 2002 letter from
AURA's human resources manager.  Reply Ex. 10.

15